# Exhibit A

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| Miguel Manzo, individually and on behalf of a class of similarly situated and aggrieved persons; and Omar Alsubbah, individually and on behalf of similarly situated and aggrieved persons,<br><br>           Plaintiffs,<br><br>   vs.<br><br>Ahmad Abudayeh, individually, as representative of a class of similarly situated persons, and as an actual and/or apparent agent of defendant Uber Technologies, Inc., a Delaware Corporation; Lucky Livery, Inc., an Illinois corporation, individually, as representative of a class of similarly situated persons, and as an actual and/or apparent agent of defendant Uber Technologies, Inc., a Delaware corporation; and Uber Technologies, Inc., a Delaware corporation,<br><br>           Defendants. | **DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF FILING OF NOTICE OF REMOVAL**<br><br>No. 2013-CH-05136<br><br>Judge Lee Preston |

**DEFENDANT UBER TECHNOLOGIES, INC.'S**
**NOTICE OF FILING OF NOTICE OF REMOVAL**

     PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 and

on April 1, 2013, Defendant Uber Technologies, Inc. ("Uber") filed a Notice of Removal in the

United States District Court for the Northern District of Illinois.  A true and correct copy of

Uber's Notice of Removal is attached hereto, omitting internal exhibits, as Exhibit A.

     PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(d), upon the

filing of the Notice of Removal with the Clerk of the United States District Court for the

Northern District of Illinois and upon filing of this Notice with the Clerk of this Court, Uber has

effected removal and this Court shall proceed no further in this action unless and until it is

remanded.

DATED: April 1, 2013          QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____

Stephen A. Swedlow
Attorney for Uber Technologies, Inc.

Stephen A. Swedlow (ARDC No. 6234550)
Andrew H. Schapiro (ARDC No. 6209041)
Amit B. Patel (ARDC No. 6309876)
Quinn Emanuel Urquhart & Sullivan, LLP
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401
Email:  stephenswedlow@quinnemanuel.com
        andrewschapiro@quinnemanuel.com
        amitbpatel@quinnemanuel.com

John B. Quinn*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:  (312) 443-3100
Email:  johnquinn@quinnemanuel.com

* *pro hac vice* to be filed

Exhibit B

| 2120 - Served | |
|---|---|
| 2220 - Not Served | |
| 2320 - Served By Mail | 2221 - Not Served |
| 2420 - Served By Publication | 2321 - Served By Mail |
| SUMMONS | 2421 - Served By Publication |
| | ALIAS - SUMMONS |

) CCG N001

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

No. ~~2013CH05136~~
CALENDAR/ROOM 16
PLEASE SEE ATTACHED FOR SERV.
Class Action

MIGUEL MANZO, et.al.

(Name all parties)

v.

AHMAD ABUDAYEH, et.al.

◉ **SUMMONS** ○ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

◉ Richard J. Daley Center, 50 W. Washington, Room 802_____, Chicago, Illinois 60602

○ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

○ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

○ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

○ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

○ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60428

○ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 40587_____

Name: Hall Adams

Atty. for: Plaintiff

Address: 33 North Dearborn Street, Suite 2350

City/State/Zip: Chicago, Illinois 60602

Telephone: (312) 445-4900

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

DOROTHY BROWN FEB 2 1 2013

_____
Clerk of Court

Date of service: _____, ____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

### SERVICE LIST FOR SHERIFF

## MIGUEL MANZO V. AHMAD ABUDAYEH

AHMAD ABUDAYEH, individually,
And as representative of a class of similarly
Situated persons, and as an actual and/or
Apparent agent of defendant Uber Technologies
Inc., a Delaware corporation
6712 174th Place
Tinley Park, Illinois 60477

Lucky Livery, Inc., an Illinois corporation,
Individually and as representative of a class
Of similarly situated persons and as an actuable and/or
Apparent agent of defendant
c/o R/A Farrukh Baqai
679 Biltmore Lane
Bartlett, Illinois 60103

Uber Technologies, Inc., a Delaware corporation
And Uber Technologies, Inc., a Delaware
Corporation
c/o R/A National Registered Agents, Inc.
200 West Adams Street
Chicago, Illinois 60606

IN THE CIRCUIT COUNT OF COOK COUNTY, ILLINOIS
COUNTY DEPARMENT, CHANCERY DEPARTMENT

Miguel Manzo, individually and on behalf of a )
class of similarly situated and aggrieved )
persons, and Omar Alsubbah individually )
and on behalf of a class of similarly )
Situated and aggrieved persons, )
)
             Plaintiffs, )
)
v. )    No.
)
Ahmad Abudayeh, individually, as representative )
of a class of similarly situated persons, and )
as an actual and/or apparent agent of defendant )
Uber Technologies, Inc., a Delaware )
corporation, Lucky Livery, Inc., an Illinois )
corporation, individually, as representative )
of a class of similarly situated of persons, and as )
an actual and/or apparent agent of defendant, )
Uber Technologies, Inc., a Delaware corporation )
and Uber Technologies, Inc., a Delaware )
corporation, )
)
             Defendants. )

2013CH05136
Class Action

**F I L E D**
CH.
FEB 21 2013
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## COMPLAINT

Plaintiffs, Miguel Manzo, individually ("Manzo") and on behalf of a class of similarly

situated and aggrieved persons ("Manzo Class"), and Omar Alsubbah, individually ("Alsubbah")

and on behalf of a class of similarly situated and aggrieved persons ("Alsubbah Plaintiff Class"),

Plaintiffs, by their attorney, Law Offices of Hall Adams, LLC, states as follows for their

Complaint against Ahmad Abudayeh, individually, ("Abudayeh") as representative of a class of

similarly situated persons ("Abudayeh Defendant Class"), and as an actual and/or apparent agent

of defendant Uber Technologies, Inc., a Delaware corporation, Lucky Livery, Inc., an Illinois

corporation, individually ("Lucky") as representative of a class of similarly situated persons

("Lucky Defendant Class"), and as an actual and/or apparent agent of defendant Uber

1

Technologies, Inc., a Delaware corporation, and Uber Technologies, Inc., a Delaware corporation, Defendants.

## NATURE OF THE CASE

1.   Defendants unfairly compete against Plaintiffs in their respective markets for vehicle-for-hire transportation services. These competitors are regulated by the City of Chicago ("City") to protect the fare-paying/riding public. Plaintiffs abide by the rules and regulations promulgated by the City and bear the associated operational costs and constraints of doing so. Defendants do not. As systematic scofflaws, defendants avoid the operational costs and constraints associated with compliance and thereby gain an unfair competitive advantage over plaintiffs. Further, defendants compete unfairly with plaintiffs by systematically collaborating with one another in misrepresenting to the fare paying/riding public material facts about the nature, character and quality of the transportation services they provide.

## PARTIES/JURIDICTION/VENUE

2.   Uber is a foreign corporation having its registered office/agent in and doing business in the County of Cook, State of Illinois.

3.   At all relevant times, Abudayeh, operated a taxi cab and provided taxi cab transportation service to members of the public in the City in ways that violated and continue to violate the City's rules and regulations for doing so as alleged in more detail herein below. Abudayeh is sued, individually, as representative of a class of taxi cab operators who similarly operated taxi cabs and provided taxi cab transportation service to members of the public in the City that violated and continues to violate the City's rules and regulations for doing so as alleged in more detail herein below, and as an actual and/or apparent agent and/or concerted

2

actor/coconspirator of Uber. References herein below to Abudayeh refer to him in each and every capacity in which this action is brought.

4. Lucky is a corporation doing business in the County of Cook, State of Illinois and, at all relevant times, provided livery (i.e., limousines, SUVs and/or sedans often referred to as "black cars", all distinct from traditional taxi cabs) transportation services to members of the public in the City of Chicago in ways that violated and continue to violate the City's rules and regulations for doing so as alleged in more detail herein below. Lucky is sued both individually, as representative of a class of persons who provided livery transportation services to members of the public in the City in ways that violated and continue to violate the City's rules and regulations for doing so as alleged in more detail herein below, and as an actual and/or apparent agent and/or concerted actor/coconspirator of Uber. References herein below to Lucky refer to him in each and every capacity in which this action is brought.

5. Plaintiffs' claims arise out of defendants' misconduct and events, transactions and occurrences that have taken place and continue to take place in the County of Cook, State of Illinois.

6. Manzo has, at all relevant times, operated a taxi and provided taxi transportation services to the public within the City as either a licensee of the City or as a lessor of a City licensee whose lease with the licensee obligates him to comply with the City's rules and regulations respecting taxi transportation services with which he has complied. Manzo sues both individually and as a representative of a class of similarly situated persons who have been damaged by defendants' unfair competitive practices as alleged in more detail herein below. References herein below to Manzo refer both to him, individually and to the class he represents.

3

7.     Alsubbah has, at all relevant times, operated a livery vehicle and provided livery transportation services to the public within the City in compliance with the City's rules and regulations for doing so. Alsubbah has, at all relevant times, provided livery transportation services to the public within the City as either a licensee of the City or as a lessor or employee or agent of a City licensee who's lease with the licensee obligates him to comply with the City's rules and regulations respecting livery transportation services with which he has complied. References herein below to Alsubbah refers both to him, individually, and to the class he represents.

## THE MARKETS

8.     Since taxicab ("taxi") and livery transportation (i.e., limousine) service providers provide transportation services that are different in character and quality, and although they may compete with one another to some limited extent, taxis and livery services have historically been considered to operate and compete in separate markets. For purposes of this action, the two markets are treated separately, one for taxis and another for livery services.

9.     To ensure that the public has access to safe and reliable vehicle-for-hire transportation and in recognition of the distinctions between the two markets, the City subjects taxis and livery services to correspondingly different sets rules and regulations.

## UBER, ITS RELATIONSHIP WITH OTHER DEFENDANTS AND PUBLICLY MISLEADING AND CONFUSING MARKETING

10.     Uber offers a Smartphone application ("app") by which the public can both hail taxis or livery vehicles and pay for taxi or livery transportation services (via the passenger's credit-card information, which is placed on file by the passenger with Uber for this purpose when the passenger subscribes to the Uber app). Uber offers its app as an alternative to street hail (of taxis) or telephone-call-and-radio-dispatch (of either taxis or livery vehicles). Uber began

4

operating as alleged herein in the Chicago market for livery transportation services in or about August 2011 and in the Chicago market for taxi transportation services on or about 18 April 2012.

11.     Besides providing an app, Uber is also fundamentally a transportation company and Uber's actual ground transportation services are provided by taxi or livery vehicle owners/operators with whom Uber separately contracts to provide such services. Smartphone's GPS technology transmits the passenger's pick-up location and transmits it to a corresponding Smartphone app that Uber provides to the drivers of taxi or livery vehicles with whom it maintains contractual arrangements to provide transportation services. In at least this way, Uber's business model and the business model of the those taxi and livery vehicle drivers with whom Uber has contracted to provide transportations services, including Abudayeh and Lucky and the respective classes of which they are representatives, necessarily act in concert with one another. This concerted action is the crux of Uber's business model.

12.     Although the inconspicuous "boilerplate" terms displayed on Smartphone screens during the process by which passengers subscribe to Uber's app carefully disclaim that Uber "is not a transportation carrier," its marketing representations are starkly different, conveying that Uber provides the car and driver. In fact, Uber, like the other taxi limousine transportation companies, contracts with drivers/chauffeurs, dispatching taxis and/or limousines, is paid for the service, and, in turn, pays the drivers/chauffeurs. Uber's marketing touts the "Uber fleet," "Uber rides," "Uber Black cars," "Uber cab," and "Uber taxis."

13.     In its market representations and other public statements, Uber represents that it carefully and continuously screens and monitors its drivers, including Abudayeh and Lucky, when in fact its screening and monitoring is cursory at best. In any event, Uber's public

5

representations convey that Uber itself vouches for the suitability of "its" drivers and vehicles, giving the clear impression and appearance that those drivers operate as agents of Uber, although Uber's "boilerplate" terms also carefully disclaim this. As a result of Uber's own representations, its drivers, including *inter alia* , Abudayeh and Lucky, are Uber's agents, actual and/or apparent.

14.     Plaintiff Manzo has been and continues to be damaged by Uber and its drivers providing illegal transportation services. There are a finite number of taxicabs in the City of Chicago, controlled by the City's medallion system. The medallion system ensures a ratio of taxicabs to available fares that is both beneficial to the public and profitable to the taxi drivers. By accepting immediate dispatches like a taxi, metering fares like a taxi, and catering to customers that taxis would otherwise service, Uber and Lucky transform livery cares into illegal unlicensed taxicabs. This raises the number of vehicles-for-hire and lowers the ratio of drivers per available fare. The result is reduced revenue for Manzo and other taxi drivers operating with a medallion and within the law.

15.     Manzo is also damaged by the illegal practices of Uber and its drivers, Abudayeh and Lucky. Whereas, Uber and Lucky reduce the number of fares available to Manzo, Uber and Abudayeh charge the nature of the remaining fees. Operation of a legal taxi dispatch and service carries obligations on the owners and drivers to provide transportation services to the traditionally underserved areas of Chicago. These underserved areas often have little foot traffic or demand for taxi services. The fares to or from underserved areas are, as a practical matter, more costly for taxi drivers because a driver must often expend time and fuel to deadhead without a fare in either direction. All Uber fares, however, are at the discretion of the drivers and are concentrated in the core downtown and near north side areas where the clientele is

6

traditionally more able to pay inflated taxi rates or limos acting as illegal taxis. Therefore, Uber, Abudayeh and Lucky operate selectively in the more profitable areas of the City, cherry-picking the more affluent riders and leaving the more costly and more difficult fares logistically for Manzo and the other legally operating taxi drivers to service as required by law for licensed taxi providers. Plaintiff, Alsubbah, is also harmed by competing with Uber's and Lucky's illegal practices. By operating as illegal taxi cabs, Lucky accepts on-demand dispatching fares, many of which would be served by traditional limos. As a law abiding livery driver, Alsubbah is foreclosed from capturing the business of these customers. Lucky, on the other hand, can obtain business using both legal fixed rates and illegal metered rates. This uneven playing field limits Alsubbah's ability to fairly compete with Lucky for fares and inhibits Alsubbah's potential income.

## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 ET.SEQ. AND UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/1 ET SEQ.

16.     At all relevant time, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., ("Consumer Fraud Act") was in full force and effect in the State of Illinois

17.     At all relevant times, the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. ("Deceptive Trade Practices Act") was in full force and effect in the State of Illinois.

18.     §10a of the Consumer Fraud Act provides a right of action for damages to a business competitor who has suffered damage as a proximate result of prohibited misconduct by a defendant. Plaintiffs have such standing to bring their claims for damages against defendants herein below.

7

19. §3 of the Deceptive Trade Practices Act provides a right of action for injunctive relief to a business competitor who has suffered or is likely to suffer damages as a proximate result of prohibited misconduct by a defendant. Plaintiffs have such standing to bring their claims for injunctive relief against defendants herein below.

## COUNT I

**MANZO V. ABUDAYEH AND UBER**
**UNFAIR COMPETITION IN VIOLATION OF THE**
**CONSUMER FRAUD ACT AND DECEPTIVE BUSINESS PRACTICES ACT**

1-19. Manzo repeats, reallages and reincorporates by reference herein the allegations contained in paragraphs (1) – (19), above, as if same were set forth here as his allegations of paragraphs (1) – (19) of this Count I.

21. City establishes fare rates for taxi transportation. City of Chicago Municipal Code 9-112-600. These rates, commonly known as "metered rates", operate as a limit on what can be charged for taxi transportation in the City.

22. Through its app and in its other public promotions, Uber represents that passengers who arrange and pay for taxi transportation through its app and by its drivers will be charged "standard taxi rates" or "metered rates" to which 20% will be automatically added as a "gratuity," which is commonly understood to refer to an additional amount (a "tip) paid directly to the taxi driver in recognition of the quality of transportation service provided.

23. In fact, only half of the so-called "gratuity" is remitted to the driver. Uber keeps the other half of the so-called "gratuity" for itself, thus effectively charging and collecting from passengers sums in excess of the "standard " or "metered" rates allowed by the City. Neither Abudayeh nor Uber informs passengers of this.

8

24.   The amount of the charge for taxi transportation and the relationship of that charge to the maximum amount of such charges allowed by law in the City are facts material to fare-paying passengers.

25.   When Uber represents to fare-paying passengers that they will be charged "standard" or "metered" rates, and that the additional 20% charge automatically added to the fare is a "gratuity," it intends that fare-paying passengers will rely on these representations. Similarly, when Abudayeh and Uber conceal from fare-paying passengers that half of the so-called "gratuity" will be retained by Uber as compensation above the "standard," or "metered" rates permitted by the City, Abudayeh and Uber intend that those fare-paying passengers will rely on the misimpression that all of the 20% is being paid to the driver as an actual "gratuity" such that they are not being charged in excess of "standard," "metered," or permissible rates for taxi transportation.

26.   Defendants and each of them violated and continue the violate Section 2 of the Consumer Fraud Act and Section 2 of the Deceptive Trade Practices Act in one or more of the following ways:

      a.   misrepresenting to fare-paying passengers that the 20% automatic charge is "gratuity," when half of it is not, and concealing from fare-paying passengers the fact that half of the 20% automatic charge is actually retained by Uber, thus effectively resulting in a charge for taxi transportation in excess of "standard," "metered" or permissible amounts; and

      b.   publishing false, misleading and confusing representations suggesting that Uber is a transportation service provider when, in fact, it is not.

27.   Manzo, who has not similarly violated and does not similarly violate Section 2 of the Consumer Fraud Act and/or Section 2 of the Deceptive Trade Practices Act, has suffered and

9

is likely to continue to suffer competitive disadvantage and damages as proximate result of defendants' violations, as follows:

      a.    If fare-paying passengers knew and understood that that taxi transportation arranged through and provided by defendants would result in effective charges in excess of "standard," "metered," or permissible rates, those passengers would have forgone and would likely forego arranging for taxi transportation through and provided by defendants and instead resort to conventional curb-side-hail or call-and-dispatch taxi transportation provided by Manzo; and

      b.    If fare-paying passengers knew and understood that the Uber actually disavowed control over and/or responsibility for the suitability, safety, and quality of "its" taxi drivers and vehicles, those passengers would have foregone and would likely forego arranging for taxi transportation through and provided by defendants and instead resort to conventional curb-side hail or call-and-dispatch taxi transportation provided by Manzo.

28.    There exists a class of persons ("Manzo plaintiff class") who have owned and/or operated since on or about April 18, 2012, and/or currently own and/or operate, taxis in the City who have sustained damage and/or are likely to sustain damage as a result of Abudayeh 's violations of the Consumer Fraud Act and/or Deceptive Trade Practices Act alleged herein above:

      a.    That is so numerous that joinder of them all in this action is impracticable;

      b.    As to which there are common questions of law and/or fact which common questions predominate over questions affecting individual members; and

      c.    The interests of which Manzo will fairly and adequately protect.

29.    There exists a class of persons ("Abudayeh defendant class) who have owned and/or operated since on or about April 18, 2012, and/or who currently own and/or operate taxis in the City who caused the class of persons alleged in paragraph (26), above, to sustain damage

10

and/or who are likely to cause that same class of persons to sustain damage by their violations of the Consumer Fraud Act and/or Deceptive Trade Practices Act alleged herein above:

      a.      That is so numerous that joinder of them all in this action is impracticable;

      b.      As to which there are common questions of law and/or fact which common questions predominate over questions affecting individual members; and

      c.      The interests of which Abudayeh will fairly and adequately protect.

30.      A class action by which the Alsubbah plaintiff class prosecutes the claims alleged herein against the Abudayeh defendant class and Uber is an appropriate method for the fair and efficient adjudication of the controversy.

WHEREFORE, Manzo demands that this Court grant the following relief:

      a.      Certify the Manzo plaintiff class;

      b.      Certify the Abudayeh defendant class;

      c.      Enter judgment in favor of Manzo and the Manzo plaintiff class and against Abudayeh and the Abudayeh defendant class and Uber and each of them for a sum in excess of $50,000.00, plus costs;

      d.      Enter such injunctive relief necessary to prevent, estop and debar defendants and each of them from continuing to violate the Consumer Fraud Act and Deceptive Trade Practices Act in the manner alleged herein.

11

## COUNT II
### ALSUBBAH V. LUCKY AND UBER –
### UNFAIR COMPETITION IN VIOLATION OF THE
### CONSUMER FRAUD ACT AND DECEPTIVE BUSINESS PRACTICES ACT

1-19.    Alsubbah repeats, realleges and reincorporates by reference herein the allegations

contained in paragraphs (1) – (19), above, as if same were set forth here as his allegations of (1) -

(19) of this Count II.

20.    In the City, it is unlawful for a livery service to use any mechanical device that

measures the distance traveled and registers a fare based on distance measured. Chicago

Municipal. Code 9-114-060. Furthermore, the City allows that livery vehicles may only be hired

a charge or fare fixed by agreement in advance. Chicago Municipal Code 9-114-280.

21.    The City defines "Taximeter" as "a device which records and indicates a charge

or fare measured by distance traveled, waiting time, number of passengers, and any extra charges

set forth in this chapter." The City requires that "Taximeters must meet specifications set forth

by the commissioner in rules and regulations," which mandate that all meters be inspected

annually.

22.    In violation of these City ordinances, Lucky and Uber use the Uber app's

Smartphone GPS to measure and calculate fares for livery transportation. In this way, the Uber

app used by Lucky and Uber unlawfully mimics the function of a Taximeter by formulating fares

based on distance such that the fare is not fixed by agreement in advance.

23.    Although Lucky and Uber publically represent and promote the fares charged by

Lucky for livery transportation arranged and paid for via Uber's app as being at or below fares

charged by other regulated livery services, the fares are substantially higher because they are

metered and not arranged in advance. This is particularly pernicious because the fare is charged

by Uber directly to the passengers credit card already "on file" with Uber so that the passenger

12

has no effective means of challenging illegal charges or overcharges. Nor is the passenger able to negotiate the total fare charged for livery transportation between two points because it is not arranged in advance as required by law.

24.     Representations that fare charges are lawful and/or lawfully imposed are material to passengers.

25.     Alsubbah is damaged because he can only use his limo as a limo and cannot also use his limo like a taxi to maximize his income, like Lucky.

26.     Lucky and Uber misrepresent to fare-paying passengers that their fare charges and/or manner of imposing fare charges for livery transportation are lawful (when they are not) with the intent that those passengers will rely upon these misrepresentations.

27.     Lucky and Uber and each of them violated and continue to violate the Consumer Fraud Act and Deceptive Business Practices Act by misrepresenting to fare-paying passengers that their fare charges and/or manner of imposing fare charges for livery transportation are lawful when they are not.

28.     At all relevant times, Alsubbah has complied with the City's restrictions alleged herein above respecting the setting and charging of fares for livery transportation.

29.     There exists a class of persons ("Alsubbah plaintiff class") who have owned and/or operated since on or about April 18, 2012, and/or currently own and/or operate in the City who have sustained damage and/or are likely to sustain damage as a result of Lucky's violations of the Consumer Fraud Act and/or Deceptive Trade Practices Act alleged herein above:

      i.      That is so numerous that joinder of them all in this action is impracticable;

      ii.      As to which there are common questions of law and/or fact which common questions predominate over questions affecting individual members; and

13

iii.     The interests of which Alsubbah will fairly and adequately protect.

30.     There exists a class of persons ("Lucky defendant class) who have owned and/or operated since on or about April 18, 2012, and/or who currently own and/or operate taxis in the City who caused the class of persons alleged in paragraph (26), above, to sustain damage and/or who are likely to cause that same class of persons to sustain damage by their violations of the Consumer Fraud Act and/or Deceptive Trade Practices Act alleged herein above:

     i.     That is so numerous that joinder of them all in this action is impracticable;

     ii.     As to which there are common questions of law and/or fact which common questions predominate over questions affecting individual members; and

     iii.     The interests of which Lucky will fairly and adequately protect.

31.     A class action by which the Alsubbah plaintiff class prosecutes the claims alleged herein against the Abudayeh defendant class and Uber is an appropriate method for the fair and efficient adjudication of the controversy.

32.     A class action by which the Alsubbah plaintiff class prosecutes the claims alleged herein against the Lucky defendant class and Uber is an appropriate method for the fair and efficient adjudication of the controversy.

WHEREFORE, Alsubbah demands that this Court grant the following relief:

a.     Certify the Alsubbah plaintiff class;

b.     Certify the Lucky defendant class;

c.     Enter judgment in favor of Alsubbah and the Alsubbah plaintiff class and against Lucky and the Lucky defendant class and Uber and each of them for a sum in excess of $50K, plus costs;

14

d.    Enter such injunctive relief necessary to prevent, estop and debar defendants and each of them from continuing to violate the Consumer Fraud Act and Deceptive Trade Practices Act in the manner alleged herein.

## COUNT III
### MANZO V. LUCKY

1-19.   Manzo repeats, reallages and reincorporates by reference herein the allegations contained in paragraphs (1) – (19) of Count I, above, as if same were set forth here as his allegations of (1) - (19) of this Count III.

20-26. Manzo repeats, realleges and reincorporates by reference herein the allegations contained in paragraphs (21) – (27) of Count II, above, as if same were set forth here as his allegations of (21) - (27) of this Count III.

27.    At all relevant times, Manzo has complied with the City's restrictions alleged herein above respecting the setting and charging of fares for taxi transportation.

28.    There exists a class of persons ("Manzo plaintiff class") who have owned and/or operated since on or about 18 April and/or currently own and/or operate taxis in the City 2012 who have sustained damage and/or are likely to sustain damage as a result of Lucky's violations of the Consumer Fraud Act and/or Deceptive Trade Practices Act alleged herein above:

    i.    That is so numerous that joinder of them all in this action is impracticable;

    ii.   As to which there are common questions of law and/or fact which common questions predominate over questions affecting individual members; and

    iii.  The interests of which Manzo will fairly and adequately protect.

15

29.     There exists a class of persons ("Lucky defendant class) who have owned and/or operated since on or about 18 April and/or who currently own and/or operate taxis in the City who caused the class of persons alleged in paragraph (26), above, to sustain damage and/or who are likely to cause that same class of persons to sustain damage by their violations of the Consumer Fraud Act and/or Deceptive Trade Practices Act alleged herein above:

   i.     That is so numerous that joinder of them all in this action is impracticable;

   ii.    As to which there are common questions of law and/or fact which common questions predominate over questions affecting individual members; and

   iii.   The interests of which Lucky will fairly and adequately protect.

30.     A class action by which the Manzo plaintiff class prosecutes the claims alleged herein against the Lucky defendant class and Uber is an appropriate method for the fair and efficient adjudication of the controversy.

31.     A class action by which the Manzo plaintiff class prosecutes the claims alleged herein against the Lucky defendant class and Uber is an appropriate method for the fair and efficient adjudication of the controversy.

WHEREFORE, Manzo demands that this Court grant the following relief:

   a.     Certify the Manzo plaintiff class;

   b.     Certify the Lucky defendant class;

   c.     Enter judgment in favor of Manzo and the Manzo plaintiff class and against Lucky and the Lucky defendant class and Uber and each of them for a sum in excess of $50,000.00, plus costs;

d.     Enter such injunctive relief necessary to prevent, estop and debar defendants and

each of them from continuing to violate the Consumer Fraud Act and Deceptive Trade Practices

Act in the manner alleged herein.

Respectfully submitted,

By:     _____

One of Plaintiffs' Attorneys

Hall Adams
Law Offices of Hall Adams LLC
33 North Dearborn Street
Suite 2350
Chicago, IL 60602
Attorney#: 40587
Telephone: 312-445-4900

17